YELVERTON, Judge.
Nita Vice, injured in a collision between her automobile and a stack of reinforcing rods being transported on a forklift operated in a public street, sued the driver of the forklift, his employer, and the employer’s insurer. A jury found Nita twenty-five percent negligent and defendants seventy-five percent negligent and awarded plaintiff $25,000. Plaintiff filed a motion for additur which was denied by the trial court. Plaintiff appealed.

Issue

The sole issue before us is whether the jury abused its discretion in awarding plaintiff, whose medical expenses were $12,864.96 and property damages were $388.50, a total award of only $25,000. Facts
On March 31, 1986, plaintiff, Nita D. Vice, was travelling in her automobile on a public street in Sulphur, Calcasieu Parish. John Murphey, an employee of defendant Home Building Materials, was operating a forklift while unloading a truck which was parked on the side of the street. The forklift was loaded with five pieces of reinforcing rod which extended out into the street. There was no warning flag attached to the ends of the rods nor was there a flagman in the area. Plaintiff attempted to maneuver around the parked truck, and in doing so, struck the ends of the rods with her car. Her car sustained only $388.50 in damages, but the loud noise that came when the rods hit the windshield and the roof of the car caused her to throw her arms up and slam on the brakes. This reaction caused her injuries.
On April 7, 1986, Nita consulted Dr. Allen Richert complaining of headaches and pain along her spine. Dr. Richert prescribed muscle relaxants and later, physical therapy. Nita subsequently made twenty-one visits to a physical therapist. Those treatments did not relieve her pain. On April 22, 1986, Dr. Richert ordered a CAT scan of the lumbar spine. The CAT scan indicated a bulging disc at L-5, S-l. Dr. Richert testified that a non-impact type accident could cause this type of injury.
Nita consulted Dr. Dean Moore, a neurosurgeon, on May 28,1986. She complained of headaches and pain in her lower back and neck. Dr. Moore performed a straight leg test which indicated that the cause of her pain was a bulging or ruptured disc. Later, Dr. Moore ordered a myelogram and a lumbar discogram.
The lumbar discogram showed an abnormal disc at L-5, S-l. On October 22,1986, Dr. Moore performed surgery on the plaintiff. He found a herniated disc at the L-5, S-l level which he removed. In December, 1986, Nita was still experiencing pain in her back. This pain existed at the time of trial.
Dr. Moore testified at the trial that Nita suffered a ten to fifteen percent permanent, partial disability as a result of the ruptured disc. Nita testified that due to her injury and subsequent surgery, she has had to forego participation in her hobbies *1277 and she experiences pain when performing housework. Dr. Moore testified that Nita could suffer future complications as a consequence of the surgery. Her medical expenses at the time of trial totaled $12,-864.94.
The testimony of Dr. Gerald Litel, another neurosurgeon, who examined Nita one time on behalf of the defendant, was also offered at trial. Dr. Litel examined Nita on July 28, 1986. This was after her initial examination by Dr. Moore but before her surgery. He performed a straight leg raising test the results of which he regarded as negative, that is, he detected no pain in the plaintiff’s back. Dr. Litel testified that he could not foresee any long term residual problems due to the injury. He testified that the plaintiff had not suffered a herniated disc.

The Conflict in the Medical Testimony

There is a conflict in the medical testimony which has to be resolved before the quantum issue can be addressed. The conflict has to do with whether the plaintiff ever had a ruptured disc, or, if she had one, whether it was caused by the accident. Dr. Litel said the plaintiff did not have a ruptured disc and Dr. Moore said she did. Dr. Litel saw plaintiff on July 28, 1986. On October 22 Dr. Moore performed surgery and found a ruptured disc at the place where his tests and diagnosis said it would be. Dr. Litel as a witness at trial, declared that when surgery is done and the back is open, a ruptured disc is visible: "... seeing is the final test”, he said, “No doubt about that.”
Since Dr. Litel at the trial maintained his conviction that when he saw the patient on July 28, 1986, she did not have a ruptured disc, the only reasonable inference that can be drawn is that he would opine that she developed the disc between his examination, July 28, and the date of surgery, October 22, when the ruptured disc was indisputably discovered. He was not asked that question at trial but his testimony leaves no other inference available.
The defendants support this verdict by arguing that the jury obviously relied on the testimony of Dr. Litel, and that “there was ample evidence in the record for the jury to conclude claimant did not sustain a ruptured disc as a result of this accident.”
We do not know what the jury was thinking. The only interrogatory as to causation was the one that asked simply whether Nita Vice was injured as a result of any negligence on the part of the defendant. The jury answered this interrogatory in the affirmative. This does not tell us whether or not the jury found that she suffered a ruptured disc as a result of the accident.
There are three possible conclusions that the jury might have reached with regard to the disc and causation issue: (1) Plaintiff had a ruptured disc, and it was caused by the March 31, 1986, accident; (2) She had a ruptured disc, but it was caused by something that happened after she saw Dr. Litel on July 28, 1986; (3) Plaintiff did not have a ruptured disc. Since the jury was not asked, and therefore did not tell us which of these possible conclusions it reached, in order to resolve the conflict in the testimony, we will make this finding of fact.
First, there is no basis in the record to reject Dr. Moore’s identification of what he saw during surgery on October 22,1986, as a ruptured disc. We find that plaintiff suffered a ruptured disc.
Second, we conclude that the ruptured disc was caused by the accident of March 31, 1986. We reach this conclusion not merely because that is the most probable cause revealed by the evidence; it is the only cause revealed by the evidence.
Plaintiff on the day of the accident had no prior history of low back trouble. Her symptoms began a few days after the accident. The medical opinion said this delayed onset of symptoms was not uncommon. The medical testimony said this type of accident could have caused a ruptured disc. Despite extended treatment and therapy, her symptoms never abated. Her surgeon, Dr. Moore, from the time he first saw her on May 28, 1986 (two months post-accident), found symptoms and diagnostic test results suggestive of a ruptured disc. He related this disc to the accident. Dr. Ric-hert, a family doctor, saw her eight days *1278 after the accident and until April 22, 1986. He treated her for low back pain from the start. The plaintiff denied having any other accident. There is no evidence at all in the record that she had any other accident, either before or after Dr. Litel’s examination. We resolve the conflict in the medical testimony by finding that she had a ruptured disc and that it was caused by the accident of March 31, 1986.

The Insufficiency of the Award

When damages are insusceptible of precise measurement, much discretion shall be left to the court for the reasonable assessment of these damages. La.C.C. art. 1999. Reck v. Stevens, 373 So.2d 498 (La.1979), interpreting C.C. 1999 [formerly C.C. 1934(3)], stressed the importance of individualizing every award to the facts and circumstances peculiar to the case, and that this is the standard by which an appellate court decides whether an award is within the finder of fact’s much discretion. Only if an articulated analysis of the facts and circumstances of the case disclose a clear abuse of that much discretion, may an appellate court raise or lower an award. Id. If the appellate court disturbs an award, its authority is limited to lowering it (or raising it) to the highest (or the lowest) point which is reasonable., Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
The record shows that Nita was in a collision with defendant’s equipment. She made a number of visits to doctors and twenty-one visits to physical therapists. She underwent various tests in the diagnostic process. She suffered a ruptured disc. She underwent surgery for removal of the disc. She went through two periods of hospitalization. She has had to refrain from hobbies and activities with her children. She is 42 years of age.
Dr. Moore testified that he diagnosed Nita as having a ruptured disc at the L-5, S — 1 level. This disc was removed. The doctor testified that the standard permanent, partial disability for removal of a one-level disc is ten to fifteen percent. Nita testified that she was experiencing pain at the time of trial, some fifteen months after the surgery. Dr. Moore believed that she could develop problems in the future such as development of scar tissue around the nerve roots, or development of an unstable spine that could require a fusion.
Individualizing the award to the facts and circumstances peculiar to this case, we find that the award was so low as to be an abuse of the jury’s discretion. The special damages amounted to $13,253.46. This means that of the $25,000 total award, only $11,746.54 was given as general damages. The general damage award was a clear abuse of discretion, and we shall raise it to the lowest point that is reasonable.
The plaintiff in Batiste v. Joyce's Supermarket, 488 So.2d 1318 (La.App. 3rd Cir.1986) suffered truly similar injuries. There, plaintiff suffered a ruptured disc, a 10% impairment of function, and Batiste had undergone surgery to correct the condition. There, her medical specials totaled $17,055.08. This court found that an award of $75,000, $58,000 of which was general damages, was not inadequate compensation for these injuries.
This court in Pepperdine v. South La. Contractors, Inc., 486 So.2d 317 (La.App. 3rd Cir.1986) held that an award of $70,000 was not excessive or an abuse of discretion by the trial court. There, plaintiff suffered a herniated disc as the result of an automobile accident. Testimony indicated that pri- or to the accident, plaintiff had participated in physical activities with her children, much like Nita had. After the accident, Pepperdine could no longer engage in these activities.
In Abshire v. Dubois, 422 So.2d 611 (La.App. 3rd Cir.1982), writ denied 427 So.2d 868 (La.1983), this court upheld an award of $100,000 when plaintiff suffered a ruptured disc at the same level as in the present case. There, the trial court based its award on a quantum range in 1982 of $45,000 — $150,000 for general damages.
■ We find that the lowest amount which the trial court could have awarded the plaintiff in this case is $73,253.46, of which $60,000 is for general damages and $13,-253.46 is for special damages. Thus, plaintiff’s award is raised to $73,253.46 which is *1279 subject to reduction due to her degree of fault (25%).
For the foregoing reasons, the judgment of the trial court is amended to increase the award to plaintiff to $73,253.46, reduced by 25%, with legal interest thereon from date of judicial demand. In all other respects, the judgment of the trial court is affirmed. The defendants-appellees are cast for costs of this appeal.
AMENDED; AND AFFIRMED AS AMENDED.